## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____
)
BRUCE BOGUSLAV and                              )
LINDA BOGUSLAV,                                 )
                        Plaintiffs,             )
                                                )
                                                )
v.                                              )          **CIVIL ACTION**
                                                )          **NO. 14-40143-TSH**
BLB TRADING, LLC,                               )
                        Defendant.              )
_____)


## MEMORANDUM AND ORDER ON DEFENDANT'S
## MOTION TO DISMISS
### September 29, 2015

### Background

Plaintiffs Bruce and Linda Boguslav ("Plaintiffs") have brought a complaint against BLB

Trading, LLC ("Defendant") alleging unfair or deceptive acts, fraud, and Home Affordable

Modification Program ("HAMP") violations.  These claims arise out of a mortgage Plaintiffs

executed in 2005 that Defendant is now attempting to foreclose upon.  Plaintiffs filed this action

in Worcester Superior Court on September 16, 2014 and the Defendant removed it to this Court

on October 2, 2014 based upon diversity jurisdiction.

This Order addresses Defendant's Motion to Dismiss Plaintiffs' Complaint for Failure to

State a Claim (Docket No. 9).  For the reasons set forth below, the motion is *granted*.

### Standard of Review

To survive a 12(b)(6) motion to dismiss for failure to state a claim, a complaint must

include sufficient factual detail to make the plaintiff's claim to relief plausible on its face.

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  A claim is facially plausible when the complaint's

factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. In evaluating a motion to dismiss, the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Langadinos v. American Airlines, Inc.,* 199 F.3d 68, 68 (1st Cir. 2000). The court may consider only facts and documents that are incorporated into the complaint; otherwise the Court must convert the motion into one for summary judgment under Fed. R. Civ. P. 12(d). *See Trans-Spec Truck Serv., Inc. v. Caterpillar, Inc.*, 524 F.3d 315, 321 (1st Cir. 2008). Narrow exceptions to this rule exist for "documents the authenticity of which are not disputed by the parties; documents central to plaintiffs' claim; or documents sufficiently referred to in the complaint." *Foley v. Wells Fargo Bank, N.A.*, 772 F.3d 63, 74 (1st Cir. 2014) (citing *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993) (internal alterations omitted).

Dismissal is appropriate if the plaintiff's well-pleaded facts do not "possess enough heft to show that plaintiff is entitled to relief." *Ruiz Rivera v. Pfizer Pharm., LLC*, 521 F.3d 76, 84 (1st Cir. 2008) (internal quotations and alterations omitted). Although detailed factual allegations are not necessary, the standard "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "The relevant inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw from the facts alleged in the complaint." *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 13 (1st Cir. 2011).

**Facts**

The Plaintiffs reside at 50 Whisper Drive, Worcester, Massachusetts. *See* Plaintiff's Amended Verified Complaint ("Pl.'s Am. Compl.") (Docket No. 6-2 at pp.100-105) ¶ 1. The

Defendant is a limited liability company organized under the laws of Florida.  Def. Notice of Removal (Docket No. 1) p. 2.

The Plaintiffs owned the property at 50 Whisper Drive and on September 2, 2006, they deeded the property to the Leviticus Realty Trust.  Def. Memo. (Docket No. 10) Ex. 10.  The Plaintiffs, as trustees of the Leviticus Trust, transferred the property to the "Keeping Kids in Their Home Foundation Corp" ("KKHFC") on November 14, 2012. Pl.'s Am. Compl. ¶ 6.  *Id.* KKHFC is the current record owner of the property.  Def. Memo. Ex. 11.

On December 2, 2005, the Plaintiffs executed a mortgage and note on the property for $504,000.00 to Mortgage Electronic Registrations Systems ("MERS").  *Id.* at ¶ 3.  The mortgage states that "MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument."  Pl.'s Am. Compl. Ex. B.  On October 10, 2006, MERS assigned the mortgage to GMAC Mortgage Corporation ("GMAC").  Pl.'s Am. Compl. ¶ 4; *see* Pl.'s Am. Compl. Ex. C.  On December 23, 2008, GMAC assigned the mortgage to ACT Properties, LLC ("ACT").  Pl.'s Am. Compl. ¶ 5; *see* Pl.'s Am. Compl. Ex. D.  On July 16, 2010, MERS assigned the mortgage to Defendant. Pl.'s Am. Compl. ¶ 6.  Defendant's affidavit, attached to the Plaintiffs' amended complaint as Exhibit E, shows two additional attempted assignments: ACT to PA Portfolio Investors ("PA") on January 18, 2012, and PA to Defendant on January 26, 2012.  *See* Pl.'s Am. Compl. Ex. E.

The promissory note is currently held by the Defendant.  *See* Pl.'s Am. Compl. ¶ 13.  As submitted to the Court, there is a separate paper[1] attached to the Note on which is written the signature of former Fremont Vice President Michael Koch and, above the signature, Defendant's name and office address.  Pl.'s Am. Compl. Ex. F.  Fremont did not specially indorse the Note to

---

[1] At oral argument, Defendant asserted that this paper is in fact the reverse side of the Note, and its appearance as a separate sheet of paper is a result of the Court's electronic filing system.

Defendant.  Pl.'s Am. Compl. ¶ 12.  It was Fremont's practice to indorse notes in blank shortly after origination if they were sold into the secondary market or to investors.  Pl.'s Am. Compl. ¶ 12; Pl.'s Am. Compl. Ex. G.  Fremont became inactive July 25, 2008, and Defendant was organized July 1, 2009.  Pl.'s Am. Compl. ¶ 13.

Plaintiffs admitted at oral argument that in early, 2006, they defaulted on the Mortgage and have not made any payments since.  As of September 16, 2014, they owed $503, 654.90 in principal and $373,132.55 in interest and other charges on the Mortgage.  The Plaintiffs commenced a loan modification request and review at some point after they received the notice of foreclosure, and have been furnished a hardship package to complete.  Pl.'s Am. Compl. ¶ 15. A foreclosure auction was scheduled for 10:00 a.m. on September 17, 2014.  *Id.*

## Discussion

The Plaintiffs argue that Defendant cannot foreclose on the mortgage because the assignment from MERS to GMAC was invalid; because MERS cannot assign mortgages generally; the Note Defendant holds is uncollectible because Fremont did not exist contemporaneously with Defendant, making it impossible for the Note to be specially indorsed to Defendant by Fremont; and that Defendant acted in violation of HAMP rules.[2]

A.    Assignment of the Mortgage from MERS to Defendant BLB

Plaintiffs allege that the October 10, 2006 assignment from MERS to GMAC is "invalid and unauthorized," in part because Fremont was inactive at the time of assignment.  *See* Pl. Am. Compl. ¶ 8.  This is analogous to the situation in *Rosa v. MERS*, where the court granted defendant's motion to dismiss, holding a MERS assignment was valid when the plaintiff alleged

---

[2]  To the extent that Plaintiffs intended to allege violations of Mass. Gen L. c. 93A ("unfair and deceptive acts and practices and unfair dealings as well as violations of the consumer protection statutes," *see* Pl. Am. Compl. ¶ 14, it is simply a "formulaic recitation of the elements," without any basis in fact, *see Twombly*, 550 U.S. at 555, and accordingly, will not be given further discussion.

that an assignment by MERS was invalid and unauthorized because the original lender had

dissolved.  *See* 821 F. Supp. 2d 423, 428 (D. Mass. 2011).  The dissolution of the original lender

does not affect MERS' authority to assign a mortgage.  *Id.* at 431; *Kiah v. Aurora Loan Servs.*

*LLC.*, 2010 WL 4781849 *4 (D. Mass. 2010).

Plaintiffs further contend that the July 16, 2010 assignment from MERS to Defendant

"negates the rest of the assignment chain upon which BLB relies in its foreclosure notices."  Pl.

Am. Compl. ¶ 10.  They argue that by July 16, 2010, MERS had already assigned away its

interest in the mortgage to GMAC (October 10, 2006), and was thus unable to assign any interest

in the mortgage.  *See U.S. Bank v. Ibanez*, 458 Mass. 637, 651 (Mass. 2011).  Even if the original

MERS-GMAC assignment were to be found invalid (making it possible for MERS to assign a

legal interest in the mortgage), a valid, direct MERS-Defendant assignment would only make

Defendant's power to foreclose valid.

Plaintiffs also argue that the July 23, 2008 assignment from GMAC to ACT was invalid

because the listed title of the person who signed the assignment is a "limited signing officer,"

and that limited signing officers may not be authorized to make mortgage assignments under

Mass. Gen. Laws c. 183 § 54B.  By the plain text of c. 183 § 54B, limited signing officers are

authorized to make assignments under § 54B.  The statute lists the positions able to make

binding assignments of mortgages, including "principal, investment, mortgage or other officer,"

and "other similar office or position."  Mass. Gen. Laws c. 183 § 54B.

Plaintiffs also asserted at oral argument that the initial MERS-GMAC assignment was

possibly invalid because "MERS is not the entity that could assign it. It had to be Fremont and

Fremont didn't do it."  This is incorrect.  This argument has been addressed by the First Circuit

several times.  *See Butler v. Deutsche Bank Trust Co. Ams.*, 748 F.3d 28, 32 (1st Cir. 2014) ,

*Woods*, 733 F.3d at 355; *Culhane v. Aurora Loan Servs. of Neb.*, 708 F.3d 282, 291-93 (1st Cir.

2013); *Elgin v. Aurora Loan Services*, LLC, 2014 WL 2048452, *2-4, 13-40062-TSH, (D. Mass.

May 16, 2014); *Halacy v. Wells Fargo Bank, NA,* No. 12–11447–TSH, 2013 WL 6152351, *2-4

(D. Mass. November 13, 2013).  At that point, Fremont did not have the assignable legal interest

in the mortgage; MERS did as Fremont's nominee.

B.     Defendant's Ownership of the Note

Plaintiffs assert it is not possible for the Note held by Defendant to be specially indorsed

to Defendant by Fremont because the two entities did not exist contemporaneously: Fremont was

liquidated in 2007 and Defendant was not formed until 2008.  While they are correct as to the

timing, the Plaintiffs have not sufficiently alleged that it is impossible for the Note to be

specially indorsed to Defendant.  The facts alleged by Plaintiffs are consistent with the Note

being indorsed in blank by Fremont when initially executed, and then being specially indorsed to

Defendant by itself after it obtained possession of the Note.  *See* Pl. Am. Compl. Ex. F.  Former

Fremont Vice President Michael Koch states in his affidavit that he does not recall indorsing this

particular Note, but he also states that he indorsed "hundreds, if not thousands" of notes, and that

the Note bears his alleged signature.  *See id.*  Where, as here, a complaint pleads facts that are

merely consistent with a defendant's liability, it stops short of the line between mere possibility

and plausibility of entitlement to relief.  *Twombly*, 550 U.S. at 557.

The signature of Michael Koch on the Note constitutes a blank indorsement.  "Regardless

of intent of the signer, a signature is an indorsement unless accompanying words, terms of the

instrument, place of the signature, or other circumstances unambiguously indicate that the

signature was made for a purpose other than indorsement.  For the purpose of determining

whether a signature is made on an instrument, a paper affixed to the instrument is a part of the

instrument.  Mass. Gen. Laws c. 106 § 3-204.  None of the exceptions listed above are present, which compels the conclusion that Michael Koch's signature on a piece of paper attached to the Note is an indorsement.  *See* Pl. Am. Compl. ¶ 11 ("There is attached to that Note on a separate piece of paper an undated purported assignment without recourse to BLB Trading, LLC, signed by Michael Koch, as Vice President of Fremont Investment."); Pl. Am. Compl. Ex. F. According to Mass. Gen. Laws c. 106 §3-205, an indorsement made by the holder of the instrument, when that indorsement does not identify a person to whom it makes the instrument payable, is a blank indorsement, which may be negotiated by transfer of possession alone until specially indorsed.  Mass. Gen. Laws c. 106 §3-205(a)-(b).  A holder may convert a blank indorsement that consists of only a signature into a special indorsement by writing, above the signature of the indorser, words identifying the person to whom the instrument is made payable. *Id.*  Here, Plaintiff has made no allegations as to how it is not possible for Defendant to have specially indorsed the Note to itself after receiving the blankly indorsed Note, and has not made a plausible claim as to why Defendant's Note is uncollectible.

At oral argument, Plaintiffs asserted that the special indorsement on the Note was undated and does not reference the note.  They argue that the indorsement is an assignment, that assignments require consideration to be valid, and that whether or not the special indorsement is a valid assignment requires that evidence be heard relating to the validity of the special indorsement.

The Court finds that an evidentiary hearing on this issue is not necessary, because, other issues aside, the Note is payable to Defendant whether or not the special indorsement is valid.  If the special indorsement is valid, Defendant is the *only* entity to whom the Note is payable, but

even if the special indorsement is invalid, Defendant holds the blankly indorsed Note, and

blankly indorsed instruments are payable to the bearer.  Mass. Gen. Laws c. 106 §3-205(b).

C.      Violation of HAMP Rules

Plaintiffs finally claim that Defendant violated HAMP rules.  HAMP violations alone do

not provide a private cause of action for a borrower.  *See Kozaryn v. Ocwen Loan Servicing,*

*LLC*, 784 F. Supp. 2d 100, 102-03 (D. Mass. 2011).  HAMP violations may serve as a basis for a

93A claim if they are unfair or deceptive.  *See id*; *see also Hannigan v. Bank of America, N.A.*,

48 F. Supp. 3d 135, 142 (D. Mass. 2014) (denying defendant's 12(b)(6) motion where "plaintiffs

applied numerous times for HAMP and Bank of America repeatedly required that they re-submit

information that they had previously provided");  *Hanrahan v. Specialized Loan Servicing, LLC*,

54 F. Supp. 3d 149, 155 (D. Mass. 2014) (holding plaintiffs have survived the motion to dismiss

stage when they have alleged a pattern or course of conduct involving misrepresentations,

delays, and evasiveness in evaluating a HAMP application).  The Plaintiffs have not alleged

unfair or deceptive HAMP violations and if they had, that 93A complaint would face similar

problems to the ones described above.

### Conclusion

The Defendants' Motion to Dismiss (Docket No. 9) is *granted* and Plaintiffs' Motion for

Leave to File an Affidavit (Docket No. 21) is *denied* as moot.


SO ORDERED.


/s/ *Timothy S. Hillman*_____
TIMOTHY S. HILLMAN
UNITED STATES DISTRICT JUDGE